Gaston, Judge.
 

 This case depends entirely on the construction and effect of a deed which is set forth literally in the transcript, and it presents two questions for our consideration. The first is, was the instrument testamentary in its character — ami the second, does the deed reserve a life estate to the donor, in the negro
 
 Lucy ?
 
 If cither of these questions must be answered in the affirmative, the nonsuit was proper; but if both ought to be decided in the negative, then the nonsuit should be set aside and a new trial awarded.
 

 The court has no difficulty in pronouncing that the instrument must be regarded as a deed, and not as a testament or in the nature of a testament. It purports a ^eed §1^’ an<* *vas ^ie °Pcl'ative words, and the of such a deed. It recites a consideration of <<]ovc „00(} wjjj a)u¡ affection,” declares that the donor “hath given and granted, and thereby doth give and js signed, sealed, and delivered as a deed, and shortly after its execution is proved and registered as a deed. The clause added after its execution, nominating a guardian for one of the infant objects of the donor’s bounty, is not inconsistent with its character as a deed, for by our law, the father has precisely the same power to dispose of the custody and tuition of his child by deed as by will, see act of 1762,
 
 (lie's. c.
 
 69, § 2.) The reservation, or supposed reservation of a life estate to * the donor, cannot make the instrument testamentary.— jf perse, it could produce this effect, much of the difficulty could have been saved which the courts have been obliged to encounter in determining onthe effect of such a reservation in a deed.
 

 The other question is acknowledged tobe one of more difficulty. It is completely settled in this State by numerous decisions, that in every gift of a slave by deed, antecedently to our act of 1823, that the reservation of a life estate to the donor annuls every ulterior interest attempted to be conveyed to the donee. These decisions
 
 *145
 
 are founded on the principle that at common law? a limitation by deed of a remainder in a chattel after an estate for life, was too remote. Whenever therefore a deed contained a reservation of such an estate to the donor, and also a limitation thereafter to the donee, the courts considered that they must either adjudge the reservation void, and an absolute estate in
 
 presentí
 
 passed to the donee, or sustaining the reservation, pronounce the ulterior limitation void; that as they could strike neither the reservation nor the limitation out of the deed, the law must be allowed to produce its effect upon each; and that the objection of the law was not to the first estate, but to that attempted to be limited over in remainder. The only words in this instrument which purport to reserve a life estate in any of the property which it contains, are these, “to have after my death,” and it is not to be denied but that taken by themselves, these words do import that the property in relation to which they are used, is not intended to pass from the donor before his death. If however these words are to be understood as applying to all the property named in the deed, I am inclined to think that they are not sufficiently strong to overrule the positive and precise expressions in the deed, which declare a contrary intent, and that taking the whole of the instrument together there is no reservation to the donor of any estate in the subjects of the gift. Such a reservation ought not indeed to be considered as contradicted by the general words “ I have given and granted,” or “do hereby give and grant.” The words “ to have after my death” may very properly be regarded as qualifying and explaining these general terms, and as showing that the gift was intended to operate beneficially after the donor’s death, and not before. But I am utterly unable to reconcile a supposed purpose to reserve an estate during life in all the articles given, with the peculiar language used in the subsequent parts of the deed , — “to hold all the said articles above mentioned to them the said
 
 William Stanly Branch,
 
 and
 
 Visey Bradley,
 
 their heirs, executors and administrators,
 
 from henceforth,,
 
 as
 
 *146
 
 their property, and proper goods and chattels,
 
 absolutely
 
 and without any manner of condition.” The intention to pass these articles in absolute property to the donees, immediately upon the execution of the deed, seems to be as explicitly declared as it was possible for words to express. Nor do I think this intention much, if at all weakened, by the last provision in the deed — “but if the said
 
 William Stanly Branch
 
 shall die without an heir, the. property to come back to my heirs.” It may indeed be said that here at least, is one condition de--dared in relation to a gift which was before pronounced to be wholly without condition ; but we cannot help perceiving that the instrument is most unskilfully written and it may well be supposed that the donor, or the writer of the deed, did not consider this provision as a condition qualifying the estate, but as a declaration how long it was to last. Though he purported to pass the property from thenceforth, absolutely and without condition, ho contemplated an event, on the happening of
 
 which
 
 tho estate so past should cease and determine. Certainly, I think, it must be admitted, that if the words “to have-after my death,” must be construed as intended to apply to all the subjects of the donation, we should have a case-very different from those in which the decisions before referred to were made. This would not be a case of the reservation of a life estate, and a limitation over, both intended and both expressed
 
 by
 
 the donor, and in which the limitation intended cannot take effect because contrary to the rules of law, but the case of a deed declaring repugnant and irreconcilable intentions — an intention to give immediately, absolutely, and unconditionally, and an intention not
 
 to
 
 give cither immediately, absolutely, or unconditionally. Instead of leaving the law to operate as its rules would permit on consistent intents plainly expressed, we should he obliged to pronounce which of two inconsistent intentions is most plainly expressed, so as to enable us to strike the one -or the other set of expressions out of the instrument, as, unmeaning and absurd.
 

 If it be practicable without violence to. the.deed to, affix
 
 *147
 
 to it an interpretation which prevents this clashing of repugnant intents, it is right to adopt such an interpretation. I think that there is a construction perfectly consistent with the language of the instrument, which removes almost if not entirely, a conflict between its different parts, and which there is besides, much reason to believe, gives the true and full meaning of the donor. — ■ I think that the words “to have after mydeath,” were intended to qualify', and by fair exposition, do qualify the gift to his daughter, of the negro
 
 Dave,
 
 and
 
 that gift
 
 only; and that the general words of limitation after-wards expressed, “to hold all the articles before mentioned to them, their heirs, &c. from henceforth, as their property absolutely and without condition,” are to he understood as subject necessarily', to the special exception expressed in relation to one only of these enumerated articles. So interpreted, the deed would he like a will in which, as is not unfrequcntly the case, there are particular legacies to several individuals, and then a sweeping disposition of all the property of the testator to some other person. There has never been any difficulty in such a case, in understanding the particular legacies to be impliedly excepted out of the general bequest, and in thus confining the operation'of the general words to the residue of the testator’s property.
 

 This deed begins witii the disposition of a family of negroes between the two persons whom the donor recognizes as his children, and with the exception of the negro
 
 Dave,
 
 this family of negroes constitutes the entire subject matter of the instrument. In the first place, he allots a"portion, and a greater portion of this family to his son, and then the other part of it to his daughter.— So far, and in relation to this main subject of the deed, there is not the slightest intimation of a purpose to reserve any interest to himself. But the donor goes on to enlarge the provision for his daughter. In addition to the share which he has given her of
 
 Lucy’s
 
 family, lie' brings in negro man
 
 Duvef
 
 and here, and here only, do we meet with words intimating a reservation. By a distinct sentence he says, “I also give to my daughter
 
 *148
 

 y{sey Bradly,
 
 my negro named
 
 Dave, to
 
 her and the heirs of her body, to have after my death.” Here is a complete disposition in regard to this negro, a reservation 0f ¡,js services to the donor for life, and a limitation over afterwards to his daughter and his heirs, and in regard to
 
 Dave,
 
 there was no necessity for the subsequent words of limitation — “ and to hold to them,their heirs, executors and administrators.” But after having put into his daughter’s portion this residuary estate in
 
 Dave,
 
 the donor then recurs to vdiat he supposes to be the unfinished part of his settlement. With respect to
 
 Higdon
 
 and the unborn child of
 
 Lucy,
 
 there had been no limitation stating the interest or estate which he intended to pass in them, and according to his views it was necessary that there should be; and it is in relation to these articles, and to the part previously given to his son, lie employs these general words of limitation. It was not unnatural after naming some of the articles constituting his daughter’s portion, to go on with what vas wanted to complete it, and to this circumstance we owe the ambiguity occasioned by the insertion of the clause about
 
 Dave
 
 in this part of the deed. Take it out of the place where it is so awkwardly thrust in, and insert it immediately before the clause of attestation, and we are presented with a full exposition of the donor’s intentions in respect to both his children, and to every article of the property. Let the deed be read thus and all repugnancy vanishes.
 
 It
 
 will then be,
 
 “
 
 I give to my son
 
 William Stanly Branch,
 
 his heirs. &c. negro woman
 
 Lucy
 
 and her two children
 
 Dennis
 
 and
 
 Martin,
 
 and all the rest of her increase, except
 
 Rigdon
 
 and the next child but one she may have, to go (i. e. which I give) to my daughter
 
 Visey,
 
 and to hold
 
 all
 
 the said articles to the said
 
 William
 
 and
 
 Visey
 
 their heirs, &c. from henceforth as their absolute property; I also give to my daughter
 
 Visey
 
 a negro man named
 
 Dave,
 
 to her and hep heirs, to have after my death.” Butitis not necessary thus • to transpose the sentence, let us but confine the words to
 
 “
 
 have after my death” the immediate subject of donation preceding them, and regard the sentence beginning with the words «‘.also I give,” and ending with the-
 
 *149
 
 words
 
 ‘
 
 after my death,’ as an independent clause, which there is nothing in the language or structure of the instrument to forbid., and then the seeming contradictions of the deed are equally removed.
 

 I am of opinion that a life estate was not reserved nor attempted to be reserved in
 
 Lucy,
 
 and that the nonsuit should be set aside and a new trial awarded.
 

 Per Curiam — Judgment reverse®.