## CIRCUMSTANCES UNDER WHICH ASSIGNMENT AND DELIVERY IS NOT A GIFT IN PRAESENTI.

Circuit Court of Cuyahoga County.

THE AMERICAN TRUST COMPANY v. IDA M. VINCENT AND NORTON T. HORR, ADMINISTRATOR OF THE ESTATE OF JOHN G. MILLER, DECEASED.

Decided, December 24, 1903.

*Gifts—Gifts In Praesenti are Invalid When Not Accompanied by Unconditional Delivery.*

Where, at the same time that life insurance policies are assigned and delivered to a person, the assignor executes and delivers to the assignee his promissory note due with interest at a fixed time after date, and at the same time an agreement is executed in which it is recited that the assignor has borrowed from the assignee the amount for which the note is given and assigned to her certain insurance policies as collateral security, which were to be hers absolutely in case the assignor died before the assignee—*Held:* The three acts constitute one entire transaction of a commercial nature, and that the assignment and delivery of the insurance policies does not amount to a gift *in praesenti.*

*M. B. & H. H. Johnson,* for plaintiff.

*Norton T. Horr* and *White, Johnson, McCaslin & Cannon,* contra.

Winch, J.; Hale, J., and Marvin, J., concur.

The controversy in this case is between the defendants, Ida M. Vincent, claiming a fund arising from insurance policies on the life of John C. Miller, deceased, as a gift made to her by said Miller in his lifetime, and the defendant, Norton T. Horr, administrator of the estate of said Miller, claiming the same fund as part of the assets of said estate.

The claim of Ida M. Vincent is set forth in her cross-petition in the following language:

"This defendant is the widow of Clinton A. Vincent, who had been the son-in-law of said John C. Miller, and who was from the time of his marriage with the daughter of the said John C. Miller, throughout the lifetime of the said daughter and thereafter, during the inter-marriage between this defendant and the said Clinton A. Vincent, looked upon and treated by the said John C. Miller and his wife, Martha, as though he were their natural son, and from the time of the inter-marriage of this defendant with the said Vincent, she was looked upon and treated by the said John C. Miller and his wife, until the latter died, and until the death of the said John C. Miller, as though she were in truth and in fact their daughter by blood, and she, in all respects conducted herself toward them, and each of them, as though she were their natural daughter, and there were many interchanges of good offices and kindness and affection between the said John C. Miller and his wife and this defendant.

"On the 14th day of April, 1898, said John C. Miller requested this defendant to lend him the sum of two thousand dollars, as a matter of friendship and kindness. This defendant was then a widow, in poor circumstances, with minor children, of whom she was the only support, and this two thousand dollars was two thousand dollars coming from insurance upon the life of her late husband, said Clinton A. Vincent, and belonging to her and her children.

"Owing to the friendly relations existing between the said John C. Miller and this defendant, she lent him said two thousand dollars, taking from him his promissory note, payable five years after date, bearing interest at the rate of six per cent. Said John C. Miller was then sixty years of age, and in good health. He was the owner and holder of three policies of insurance upon his life; one in the Connecticut Mutual Life Insurance Company for four thousand dollars; one in the Provident Savings & Life Insurance Company for one thousand dollars, and another in the same society for two thousand dollars.

"Said John C. Miller, in consideration of said loan, and of the friendship and affection existing between him and this defendant, then agreed to transfer absolutely to this defendant said three policies—the same to be hers absolutely; but in the event of her dying before said Miller, then said Miller should have the right to redeem said policies by paying to her estate, the sum of two thousand dollars.

"Said Miller thereupon, on said date, executed and delivered to this defendant absolute assignments, in due form, of all three of said policies and said Miller and this defendant also on that date signed a written agreement, which was intended to, and, as this defendant believes, does express the agreement hereinbefore set forth.

"At the same time said Miller delivered to this defendant said three policies, and they have remained in her possession ever since, with the exception about to be stated.

"Said assignments were at once transmitted to the respective companies, and approved by them. The amount so loaned to the said Miller was more than enough, as this defendant believes, and avers the fact to be, to pay all his then existing debts.

"Nearly a year after the matters hereinbefore set forth said John C. Miller again asked this defendant, as a matter of friendship, to let him take one of these policies, so that he could secure the sum of four hundred and sixty-five dollars borrowed from Adolph Mayer; and as a matter of kindness to one for whom she had great affection, and who had much affection for her, without consideration, she consented thereto, and delivered to him said two thousand dollar policy, and he borrowed said sum of four hundred and sixty-five dollars from said Adolph Mayer, and assigned to him said policy as security therefor, and immediately thereupon executed to this defendant another absolute assignment of said policy, subject only to the lien created by said pledge to said Adolph Mayer, of said policy, and said last-mentioned assignment was at once transmitted to the insurance company, which accepted it and agreed to act upon the same.

"Said Miller in no way obligated himself to pay the premiums on said insurance.

"This defendant has demanded, claims the entire amount in the possession of said plaintiff as due to her by reason of the premises."

The agreement of April 14, 1898, is as follows:

"CLEVELAND, April 14, 1898.

"Article of agreement by and between Mrs. Ida M. Vincent and John C. Miller of Cleveland, Ohio.

"Whereas the said John C. Miller has this day borrowed from the said Mrs. Ida M. Vincent the sum of $2,000 to bear 6% interest from date, and as collateral security has assigned the following life insurance policies to the said Mrs. Ida M. Vincent: policy 163119 in the Connecticut Mutual Life Insurance Company of Hartford, Connecticut, for $4,000; also policies No. 74371 and 49788 in the Provident Savings & Life Insurance Society of New York. The condition of the assignment of the above policies are that if the said John C. Miller dies before the said Mrs. Ida M. Vincent, the policies shall be hers, and I hereby authorize the above companies to pay said policies in full to Mrs. Ida M. Vincent; but in the event of her, Mrs. Ida M. Vincent's death before the said John C. Miller, then said policies to revert back to the said John C. Miller upon the condition that the said John C. Miller shall pay to the estate of Ida M. Vincent the sum of two thousand dollars.

                          "MRS. IDA M. VINCENT.
            " (Signed)     JOHN C. MILLER.
"Witness:  W. A. SANDERS.
       "4/14/98."

The sole claim of counsel for Ida M. Vincent in the argument of this case proceeded upon the following lines: that the transaction of April 14, 1898, between Miller and Mrs. Vincent was a valid gift *inter vivos*; that by the assignments endorsed on the policies from the donor to the donee, which took effect immediately, the gift was fully executed by the delivery of said policies to Mrs. Vincent at the time of their transfer; that they were accepted at the time by her as a gift; that the gift being so perfected by delivery and acceptance, the condition annexed that should Mrs. Vincent die before Miller, then said Miller should have the right to redeem said policies by paying to her estate the sum of two thousand dollars, does not impair the validity of the gift.

In support of the last proposition that the condition annexed does not impair the validity of a gift, counsel cited numerous cases which we have examined. Most of said cases come more properly under the classification of voluntary trusts rather than of gifts; in most of them there was delivery of property to a third person to hold in trust and pay upon certain conditions to the object of the donor's bounty; in some of them the donor constituted himself trustee.

*Hazerman* v. *Wigint,* 108 Mich., 192: "The delivery of a mortgage by its owner to one person with instructions to deliver the same to another after the owner's death, is a sufficient delivery to meet the requirement of a valid gift *inter vivos.*"

*Bostwick* v. *Mahaffy,* 48 Mich., 342: "Property put by a father in the hands of a third party to be delivered to his daughter upon his death, is sufficiently appropriated to belong to her after his death occurs."

*Ruiz* v. *Dow,* 113 Cal., 490: In this case a deed of real and personal property was made by a husband to his wife, and delivered to a third party for her benefit, with instructions to record it after his decease. Such delivery to a third person was held valid and sufficient to vest title in the wife to all the real and personal property described in the deed.

*Greene* v. *Tulare,* 52 N. J. Eq., 173: Deposit of bonds by Tulare with C. S. G. with instructions to deliver them "in case of my death" to Miss U. P. and her sister A. C. The ladies mentioned were held entitled to the bonds after T's death. This case also cites the case of *Moore* v. *Darton,* 46 De G. & S., 517, where the facts were as follows: A Miss Darton loaned to Moore (the plaintiff) £100, and he signed the following document: "Received of Miss Darton, for the use of Anna Dye, £100, to be paid her at Miss Darton's death, but the interest at four per cent. to be paid to Miss Darton." Underneath the same was written, "I approve the above. Betty Darton." This document was given to Miss Darton. The money was not paid her in her lifetime. Held by Vice-Chancelor Knight Bruce that Moore was a trustee for Anna Dye, for £100.

*Wyble* v. *McPherson,* 52 Ind., 393: Delivery by a father of certain bonds to a third person with instructions to give the bonds to certain children upon the father's death. The trust was upheld.

*Blanchard* v. *Sheldon,* 43 Vt., 512: "The defendant's testatrix in her lifetime delivered to Henry L. Sheldon $300 and took a writing as follows: 'For value received I promise to pay Auretta Ballou three hundred dollars with annual interest, on demand, if she called for it before she deceased, if not, to be paid to

Daniel M. Blanchard, by her order. (Signed) Henry L. Sheldon. Miranda Hines.'

"This paper she retained and it was with her other papers at her decease, and she had collected no part of said amount. Her intention was in taking this paper to have it drawn so that said Daniel would have whatever she should not use of the $300. *Held*: That the $300 became vested in said Daniel, subject to be defeated only by said Aurilla's taking some further action in regard to it; and she never having taken any, the transaction can be held as a gift *inter vivos*."

On page 514 of the opinion Judge Ross says:

"The delivery in a *donatio causa mortis* may be to a third person to hold in trust for the beneficiary, as was held in *Caldwell, Admr., v. Renfrew,* 33 Vt., 213, and *Way* v. *Emery,* not yet reported. So a gift *inter vivos* may be delivered to a third person to hold for the donee. To constitute a valid gift *inter vivos,* there must be both a delivery of the gift by the doner to the donee, or to some one for the donee, and an acceptance by the donee. In this case there was a delivery of the $300 by the donor to Henry L. Sheldon, for the plaintiff. The law presumes the acceptance of a gift by the donee when it is unaccompanied by any condition to be performed by the donee. Nor do we see, upon principle, how a gift, if absolute, and delivered to a third person for the donee, but not to be delivered to the donee till the happening of some event, or if liable to be wholly defeated if a certain event occurs, is any the less a valid gift."

This case is cited rather at length, because it is one of the cases counsel relies upon as authority for his general claim that a gift may be made upon condition. It will be noticed, however, that the judge delivering the opinion calls particular attention to the fact that the delivery of the gift was to a third person, for the benefit of the donee, and that the third person or trustee held possession of the money until all conditions had been complied with.

*Davis* v. *Ney,* 125 Mass., 590: A depositor in a savings bank delivered her bank book, accompanied by an assignment of her deposits to B., upon an oral agreement that B. should draw for her what money she wanted during her lifetime, and pay the balance, if any, left at her death to her son. In pursuance of

this agreement B. paid to A. certain sums of money before her death, and the balance remaining after her death he paid to her son. *Held*: That the delivery and assignment to B. constituted a valid gift.

*Kendrick* v. *Ray*, 173 Mass., 305: "A trust which has been established in favor of B. in the proceeds of a policy of insurance on the life of C. payable 'to and for the sole and separate use and benefit of A., trustee,' is not inoperative as an attempted testamentary disposition of property by C."

The foregoing cases all have the incident of a delivery to a third person as trustee for beneficiaries named. The following cases cited by counsel for Mrs. Vincent illustrate the creation of a trust in the donor himself:

*Ray* v. *Simmons*, 11 R. I., 266: B. deposited in a savings bank certain moneys in his own name as trustee for R. B. gave the bank book to R., who returned it to B., in whose control it remained. *Held*: that the trust was completely constituted. *Held*, further, that the trust being constituted, the fact that it was voluntary, was no reason for refusing relief. To constitute a trust it is enough if the owner of property conveys it to another in trust, or if the owner of personalty unequivocally declare, either in writing or orally, that he holds it *in praesenti* in trust for another.

*Scrivens* v. *North Easton Savings Bank*, 166 Mass., 255, is like the Rhode Island case, the controversy being over a deposit by "A. in trust for B., payable in case of my death to B."

*Branch* v. *Byrd*, 15 N. C., 142: The court in this case construed an informal deed of slaves, wherein a life estate therein was renewed in the grantor and held that the intention to pass the chattels in absolute property to the donees, immediately upon the execution of the deed was explicitly declared, there was no condition in the gift; the gift was of the slaves subject to a life estate reserved.

But the case most nearly sustaining the contention of counsel for Mrs. Vincent is *Schollmier* v. *Schoendelen*, 78 Iowa, 426, in which the facts were as follows:

"Plaintiff's intestate had a deposit in a bank evidenced by entries in her pass book. At the end of the account she procured

the cashier to write as follows: 'Pay to S. and H. all of the within deposit after my decease,' and signed her name thereto. After this she neither deposited any more money nor drew upon the deposits already made. Subsequent to the assignment, and before her death, the bank book was in the possession of S. and H., and after her death they drew the money. *Held*: 1. That the writing was in terms a full assignment of the amount shown by the book to be due at the time it was made, and not of the amount which should be due at the death of the assignor, and that if it was treated by the assignor as a completed transaction it passed a present interest in the bank account, and was not vulnerable to the objection that it was of a testamentary character, and therefore void, because not executed in the manner provided by law for such instruments. 2. The assignment in such case having been of the whole deposit, and the bank having had notice thereof, and having a rule that deposits evidenced by a bank book could be drawn out only upon the production of the book—*Held*: That if the book was delivered by the assignor to the assignees for the purpose of perfecting the assignment, it became irrevocable, and bound the bank to hold the deposit for payment to the assignees upon the death of the assignor.''

In the opinion Judge Robinson, who decided the case, distinguishes it from the case of *Basket* v. *Hassell*, 107 U. S., 602, and as the latter case is much relied upon by counsel for the administrator in this case, it is proper to quote what Judge Robinson says on page 430 of his opinon about the Basket case:

''It is contended on the part of appellee that the assignment was so drawn as to be revocable, and the case of *Basket* v. *Hassell*, 107 U. S., 602, is cited as sustaining that position. In that case a certificate of deposit was endorsed by its owner during his last sickness as follows: 'Pay to Martin Basket, of Henderson, Kentucky, no one else; then not till my death. My life seems to be uncertain. I may live through this spell. Then I will attend to it myself. H. M. Chaney.' After making this endorsement Chaney delivered the certificate to Basket, and died. The court speaks of this transaction as being, in substance, not an assignment of the fund on deposit, but a check upon the bank against a deposit, which, as is shown by all the authorities, and upon the nature of the case, can not be valid as a *donatio mortis causa*, even where it is payable *in praesenti*, unless paid or accepted while the donor is alive. But there is a marked difference between the effect of the endorsement in that case and the assign-

ment in this.   While in that case the endorsed certificate was delivered, yet the language of the endorsement showed clearly that it was not to take effect in case the endorser recovered.   As stated by the court, the donor attached to his endorsement and delivery a condition precedent which must happen before it became a gift.   In this case the conditions related to the time when the interest transferred might be enjoyed, and not to its transfer.''

Now let us see if the case at bar squares itself with this Iowa case.   To construe the transaction we must consider its elements.

There were three things done by Miller on April 14, 1898; first, he gave Mrs. Vincent his note for $2,000 payable to her order five years after date, with interest at six per cent.; second, he assigned the policies to her and delivered them to her; third, he executed the agreement which is above set out in full.   It is not claimed that these three things were done in the order named, but that these three things done were parts of one transaction and must be construed together.   The promissory note given is an important element in the matter.   It gives a commercial aspect to the affair which can not be overlooked.   The assignment and delivery of the policies, taken in connection with the note, which was to become due on a day fixed, is fully explained by the statement that the policies were collateral to the note.   Had there been no note given, the assignment and delivery of the policies taken in connection with the written agreement could be construed as consummating and perfecting a gift.   Delivery is necessary to a valid gift and realizing this counsel for Mrs. Vincent has urged strongly that the assignment and delivery of the policies to Mrs. Vincent was for the purpose of perfecting the gift; that thereby a gift *in praesenti* was made, the conditon attached as to Miller's dying first relating only to the time when the interest transferred might be enjoyed and not to its transfer.

We think the transaction should not be construed so favorably for the claim of a gift.   It has been said by a judge of the Supreme Court of this state that ''gifts'' *inter vivos*, like gifts *causa mortis*, are watched with caution by the courts, and to support them clear and convincing evidence is required.''   *Flan-*

*ders* v. *Blandy,* 45 O. S., 108.  The mere fact that Miller delivered the policies to Mrs. Vincent and that she had possession of them after his death, raises no presumption in favor of a gift. Nor is the testimony introduced as to the relation of the parties and the statements made by Miller at the time ''clear and convincing proof'' that these policies were assigned and delivered to Mrs. Vincent with the intention that thereby he completed a gift *in praesenti* to her.  The intention to make a gift requires no such oral testimony to prove it; it is shown by the writing. The point in controversy is whether a gift really was made and fully consummated.  All the evidence must be considered.  The loan of money the giving of a note and the statement in the agreement itself that Miller ''as collateral security has assigned the following life insurance policies to Mrs. Ida M. Vincent,'' has more convincing force with us than such statements of witnesses and we conclude that in this case there has been a failure to prove that the delivery of the policies was a delivery of a gift.

This conclusion is further warranted by the language of the agreement, bearing in mind all the time that Mrs. Vincent held Miller's note.  Upon this view of the matter we adopt the contention of counsel for the administrator, which is as follows:

The meaning of the contract is that Mrs. Vincent loans $2,000 to Miller; he gives her his note therefor and pledges the policies as collateral security for the payment of the note.  Then, intending to give her the policies, Miller adds that if he dies first she shall have them.  To this business transaction a gift was added, but to make the gift, Miller adds in the contract that if he dies first ''the policies shall be hers.''  The very nature of the transaction is such that he could have no other intent than to make her a gift at the time of his death.  The contract gave to Mrs. Vincent the legal title to the policies and left Miller the equity of redemption and the provision in regard to her having the policies at his death was simply to transfer to her his equity if the debt was not paid prior to his death.  There was no present giving of the policies; the language of the agreement looks entirely to the future.  Being a promise to give and not a gift *in praesenti,* and the promise to be fulfilled at the donor's death, it

is testamentary in character and void. , *Basket* v. *Hassel*, 107 U. S., 602.

Having reached this conclusion with reference to the claims urged by counsel for Mrs. Vincent, it is unnecessary to consider the questions raised by the administrator as to the rights of creditors of Miller's estate. There being no valid gift to Mrs. Vincent, the fund in controversy should be paid over to the administrator, and decree may be drawn accordingly.

Judgment for defendant, Norton T. Horr, administrator.