## BASKET *v*. HASSELL.

1. A certificate of deposit in these terms : —

> "EVANSVILLE NATIONAL BANK,
> "EVANSVILLE, IND., Sept. 8, 1875.
>
> ·"H. M. Chaney has deposited in this bank twenty-three thousand five hundred and fourteen $\frac{70}{100}$ dollars, payable in current funds, to the order of himself, on surrender of this certificate properly indorsed, with interest at the rate of six per cent per annum, *if left for six months*.
>
> "$23,514.70.                    HENRY. REIS, *Cashier*,"

— may, as a subsisting chose in action, be the subject of a valid gift, if the person therein named indorse and deliver it to the donee, and thus vest in him the whole title and interest therein, or so deliver it, without indorsement, as to divest the donor of all present control and dominion over it, and make an equitable assignment of the fund, which it represents and describes.

2. A *donatio mortis causa* must, during the life. of the donor, take effect as an executed and complete transfer of his possession of the thing and his title thereto, although the right of the donee is subject to be divested by the actual revocation of the donor, or by his surviving the apprehended peril, or by his outliving the donee, or by the insufficiency of his estate to pay his debts. If by the terms and condition of the gift it is to take effect only upon the death of the donor, it is not such a *donatio*, but is available, if at all, as a testamentary disposition. Where, therefore, during his last illness, and when he was in apprehension of death, the person named in the above certificate made thereon the following indorsement : —

> "Pay to Martin Basket, of Henderson, Ky.; no one else; then not till my death. My life seems to be uncertain. I may live through this spell. Then I will attend to it myself.
>
> "H. M. CHANEY,"

— and then delivered it to Basket, and died at his home in Tennessee, — *Held*, that Basket by such indorsement and delivery acquired no title to or interest in the fund.

3. An appeal will not be dismissed by reason of the omission of certain persons who were parties to the suit in the court below, if they have no interest in maintaining or reversing the decree.

APPEAL from the Circuit Court of the United States for the District of Indiana.

This is a bill in equity, filed by Hassell, administrator of Chaney, a citizen of Tennessee, to which, besides Basket, a citizen of Kentucky, The Evansville National Bank, Indiana, Samuel Bayard, its president, and Henry Reis, its cashier, and James W. Shackelford and Robert D. Richardson, attorneys for Basket, citizens of Indiana, were made parties defendant.

The single question in the case was, whether a certain fund, represented by a certificate of deposit, issued by the bank to Chaney in his lifetime, belonged to Basket, who claimed it as a gift from Chaney, and had possession of the certificate, or to Hassell, as Chaney's administrator.   Basket asserted his title not only by answer, but by a cross-bill.   The final decree ordered that the certificate of deposit be surrendered to Hassell, and that the bank pay to him, as its holder, the amount due thereon.   The money was then tendered by the bank, in open court, and the certificate was deposited with the clerk.   It was thereupon ordered, Basket having prayed an appeal, that until the expiration of the time allowed for filing a bond on appeal the bank should hold the money as a deposit at four per cent interest, but if a bond be given, that the same be paid to the clerk, and by him loaned to the bank on the same terms.   Basket failed to give the bond required for a *supersedeas*, but afterwards prayed another appeal, which he perfected by giving bond for costs alone.   To this appeal Basket and Hassell are the parties respectively, the co-defendants not having appealed, or been cited after severance.   On the ground that they are necessary parties, Hassell moves to dismiss the appeal.

The fund which gave rise to the controversy was represented by a certificate of deposit, as follows: —

" Evansville National Bank,

" Evansville, Ind., Sept. 8, 1875.

" H. M. Chaney has deposited in this bank twenty-three thousand five hundred and fourteen $\frac{70}{100}$ dollars, payable in current funds, to the order of himself, on surrender of this certificate properly indorsed, with interest at the rate of 6 per cent. per annum, if left for six months.

" $23,514.70.                           Henry Reis, *Cashier.*"

Chaney, being in possession of this certificate at his home in the county of Sumner, State of Tennessee, during his last sickness and in apprehension of death, wrote on the back thereof the following indorsement: —

" Pay to Martin Basket, of Henderson, Ky.; no one else; then not till my death.   My life seems to be uncertain.   I may live. through this spell.   Then I will attend to it myself.

" H. M. Chaney."

Chaney then delivered the certificate to Basket, and died, without recovering from that sickness, in January, 1876.

*Mr. Philip Phillips* and *Mr. W. Hallett Phillips* for the appellant.

Chaney undoubtedly intended, by the indorsement and delivery of the certificate, that Basket should receive the money evidenced by it. The inquiry then is, whether the words used by him are to be construed by some rigorous rule of law so as to defeat his intention.

This subject of donations *causa mortis* was at an early period considered by Lord Hardwicke in *Ward* v. *Turner*, 2 Ves. Sen. 431, in which he held that an actual delivery was indispensable, and that a delivery to the donee, of receipts for South Sea annuities, was not sufficient to pass the property, though it was strong evidence of the intent. The delivery of the receipt was not a delivery of the thing.

After referring to the ruling, that a promissory note or bill of exchange not payable to bearer or indorsed in blank cannot so take effect, inasmuch as no property therein can pass by the delivery of the instrument, and to the like ruling for like reason, as to receipts for South Sea annuities, Story says: "It may admit of doubt whether the doctrine can now, upon principle, be sustained; for the ground upon which courts of equity now support *donationes mortis causa* is not that a complete property in the thing must pass by the delivery, but that it must so far pass by the delivery of the instrument as to give a title to the donee to the assistance of a court of equity to make the donation complete. The doctrine no longer prevails, that where a delivery will not execute a complete gift *inter vivos*, it cannot create a *donatio mortis causa*, because it would not prevent the property from vesting in the executor; and that as a court of equity will not, *inter vivos*, compel a party to complete his gift, so it will not compel the executor to complete the gift of his testator. On the contrary, the doctrine now established by the highest authorities is, that courts of equity do not consider the interest as completely vested in the donee, but treat the delivery of the instrument as executing a trust for the donee to be enforced in equity." Story's Eq. Jur., sect. 607, p. 618.

In *Duffield* v. *Elwes*, Sir John Leach made the declaration that where delivery would not execute a complete gift *inter vivos* it could not create a *donatio mortis causa.* This proposition was directly overruled by Lord Eldon in the House of Lords on appeal. 1 Bligh, N. S. 497.

He held that it was only essential to constitute a *donatio causa mortis* that the delivery should be sufficient to raise a trust, and that equity would compel the representatives of the donor to complete that which was incomplete.

In *Veal* v. *Veal*, the gift was resisted on the ground that the note was payable to order, and not indorsed. Romilly, M. R., after reviewing previous decisions, refers to the fact that Sir John Leach's decision in *Duffield* v. *Elwes* had been overruled in the House of Lords, and says: "I also think it a much more healthy state of the law, that the validity of such a gift should not depend on whether the testator had written his name on the back of the bill or not, if it be the clear intent that he intended to give it." 27 Beav. 303.

In *Grymes* v. *Hone*, 49 N. Y. 17, the owner of certain bank stock made an assignment of the same to his granddaughter, and appointed her his attorney to transfer or sell the same for her use. This paper, after being kept by him for some time, he delivered to his wife, saying: " I intend this for Nelly ; if I die, don't give it to the executor." She asked, " Why not give it to her now? "  " Well," said he, " better keep it for the present. I don't know how much longer I may last, or what will happen, or whether we may need it."

The action was, by the donee, against the executor for the recovery of the bank stock or its value. Judgment was rendered for plaintiff and affirmed in the court of appeals.

There it was said the transaction as to such a gift is : " The donor says, ' I am ill, and fear I shall die of this illness, wherefore I wish you to take these things and hand them to my granddaughter after my death ; but do not hand them to her now, as I may need them.' A good *donatio mortis causa* always implies all this. If delivered absolutely to the donee in person, the law holds it void in case the donor recovers, and he may then reclaim it. To make a valid gift *mortis causa*, it is not necessary there should be any express qualification in the

transfer of delivery. It may be found to be such a gift from the attending circumstances, though the written transfer may be absolute."

It was urged that the gift was not completed, inasmuch as the stock was not transferred on the book of the bank, and could not be until the certificate was surrendered; that equity would not aid a volunteer to perfect an imperfect title. But the court held that, by the modern authorities, the gift was valid, notwithstanding these objections, that the equitable title passed by the assignment, and it was not necessary to hand over the certificate; that a court of equity will compel the donor's representative to produce the certificate, that the legal title may be perfected.

The doctrine as we have announced it is fully sustained by the decisions in Tennessee, where the gift was made.

In *Gass* v. *Simpson*, decided in 1867, Gass, as administrator of Carter, filed his bill, in which he alleged that when Carter left home, in 1862, to join the Union army in Kentucky, from whence he never returned (having died in 1863), he placed in Simpson's hands for safe keeping certain moneys, notes of hand, and receipts, with other valuable papers, all of which complainant was entitled to as administrator.

Simpson answered that when Carter made this deposit with him, he said, if he never returned, he wanted it all to belong to his son, George Simpson, then a youth of six years.

The case was heard on bill and answer, and this was decreed as a good gift *causa mortis*. 4 Cold. (Tenn.) 288.

The certificate of deposit held by Chaney was in all respects the negotiable promissory note of the bank, and, on well-settled decisions, its delivery, with or without an indorsement, would confer a good title.

The learned district judge, in his opinion, admits that it is "now settled that choses in action, whether negotiable or not, may be the subject of gifts *causa mortis*," and that money on deposit may be delivered by delivery of the certificate of deposit.

Nevertheless, he holds that in this case there was no gift, inasmuch as by the indorsement of the certificate Basket "could

not have compelled the delivery of the money to him during the lifetime of the donor."

But if our preceding citations correctly define the principles governing such gifts, the delivery of a note payable to order and not indorsed, or the delivery of the bank-book without assignment, constitutes a good gift, though the money could not be collected in the lifetime of the donor.

The certificate was delivered. It represented the money which Chaney had loaned to the bank. The wording of the indorsement does not affect the question of delivery of the paper, but expresses the condition on the happening of which Basket's title to the money due by the bank should be complete.

Similar language is found in many of the cases which have been sustained as gifts *causa mortis.* Thus, in *Snelgrove* v. *Bailey*, decided by Lord Hardwicke, there was a delivery of a bond with the declaration, " In case I die, it is yours." 3 Atk. 214. " I want to deal with it in my lifetime." *Meridith* v. *Watson*, 17 Jur. 1063. In *Sessions* v. *Moseley*, decided by Chief Justice Shaw, notes were handed by payee to another to be given by him to a third after the donor's death. 4 Cush. (Mass.) 87. *Mitchell* v. *Smith*, much relied on by the other side, does not touch the question. The indorsement was not made in contemplation of death. There was no evidence to show that the testator was not in perfect health at the time of the gift. The court below held that the indorsement was sufficient to found a recovery at law. This was reversed on appeal. The same donor subsequently, in contemplation of death, and *in extremis*, handed to the defendant some mortgage deeds, saying: " I want to leave something for Christiana." " Give them to Christiana." This was held good as a gift *causa mortis*, and the report is particular to say, " that it was not sought to disturb the Vice-Chancellor's decision upon the point relating to the gift of the title-deeds." 10 L. T. N. s. 520, 801.

The condition expressed in the indorsement of the certificate is one which the law would enforce under the circumstances, if the indorsement had been absolute. *Grymes* v. *Hone*, above cited.

The rule as to checks and notes of the donor himself stands on different grounds ; unless presented in the lifetime of the

drawer, they will not be paid. The question here is as to the effect of the indorsement of a note of the bank.

*Mr. Asa Iglehart* and *Mr. J. E. Iglehart, contra.*

MR. JUSTICE MATTHEWS, after stating the case, delivered the opinion of the court.

It is apparent that the sole controversy is between Basket and Hassell, the present parties to the appeal. By the delivery of the certificate of deposit to the clerk the attorneys of Basket are exonerated from all responsibility ; and the payment of the money by the bank to Hassell equally relieves it and its officers; for, not being parties to the appeal, and the execution of the decree not having been superseded, the decree will always furnish them protection, whether affirmed or reversed, because, if reversed, it would only be so as between the parties to the appeal. So that the omitted parties have no legal interest, either in maintaining or reversing the decree, and, consequently, are not necessary parties to the appeal. *Forgay* v. *Conrad*, 6 How. 203 ; *Cox* v. *United States*, 6 Pet. 182 ; *Germain* v. *Mason*, 12 Wall. 261 ; *Simpson* v. *Greely*, 20 id. 152. The motion to dismiss the appeal is accordingly overruled.

It is claimed on behalf of the appellant that the delivery of the certificate under the circumstances mentioned in the statement of the case constitutes a valid *donatio mortis causa,* which entitles him to the fund ; and whether it be so, is the sole question for our determination.

The general doctrine of the common law as to gifts of this character is fully recognized by the Supreme Court of Tennessee as part of the law of that State. *Richardson* v. *Adams*, 10 Yerg. 273 ; *Sims* v. *Walker*, 8 Humph. 503 ; *Gass* v. *Simpson*, 4 Cold. 288.

In the case last mentioned, that court had occasion to consider the nature of such a disposition of property, and the several elements that enter into its proper definition.

Among other things, it said : —

"A question seems to have arisen, at an early day, over which there was much contest, as to the real nature of gifts *causa mortis.* Were they gifts *inter vivos*, to take effect before the death of the donor, or were they in the nature of a legacy,

taking effect only at the death of the donor. At the termination of this contest, it seems to have been settled, that a gift *causa mortis* is ambulatory and incomplete during the donor's life, and is therefore revocable by him and subject to his debts, upon a deficiency of assets, not because the gift is testamentary or in the nature of a legacy, but because such is the condition annexed to it, and because it would otherwise be fraudulent as to creditors; for no man may give his property who is unable to pay his debts; and all now agree that it has no other property in common with a legacy. The property must pass at the time and not be intended to pass at the giver's death; yet, the party making the gift does not part with the whole interest, save only in a certain event; and until the event occurs which is to divest him, the title remains in the donor. The donee is vested with an inchoate title, and the intermediate ownership is in him; but his title is defeasible, until the happening of the event necessary to render it absolute. It differs from a legacy in this, that it does not require probate, does not pass to the executor or administrator, but is taken against and not from him. Upon the happening of the event upon which the gift is dependent, the title of the donee becomes, by relation, complete and absolute from the time of the delivery, and that without any consent or other act on the part of the executor or administrator; consequently, the gift is *inter vivos*." In another part of the opinion (p. 297) it is said: "All the authorities agree that delivery is essential to the validity of the gift, and that, it is said, is a wise principle of our laws, because delivery strengthens the evidence of the gift; and is certainly a very powerful fact for the prevention of frauds and perjury."

In the first of these extracts there is an inaccuracy of expression, which seems to have introduced some confusion, if not an apparent contradiction, when, after having stated that "the property must pass at the time and not be intended to pass at the giver's death," it is added, that "until the event occurs which is to divest him, the title remains in the donor." But a view of the entire passage leaves no room to doubt its meaning; that a *donatio mortis causa* must be completely executed, precisely as required in the case of gifts *inter vivos*, subject to be divested by the happening of any of the con-

ditions subsequent, that is, upon actual revocation by the donor, or by the donor's surviving the apprehended peril, or outliving the donee, or by the occurrence of a deficiency of assets necessary to pay the debts of the deceased donor. These conditions are the only qualifications that distinguish gifts *mortis causa* and *inter vivos*. On the other hand, if the gift does not take effect as an executed and complete transfer to the donee of possession and title, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only if made and proved as a will.

This statement of the law is, we think, correctly deduced from the judgments of the highest courts in England and in · . this country ; although, as might well have been expected, since the early introduction of the doctrine into the common law from the Roman civil law, it has developed, by new and successive applications, not without fluctuating and inconsistent decisions.

" As to the character of the thing given," says Shaw, C. J., in *Chase* v. *Redding*, 13 Gray (Mass.), 418, 420, " the law has undergone some changes. Originally it was limited, with some exactness, to chattels, to some object of value deliverable by the hand ; then extended to securities transferable solely by delivery, as bank-notes, lottery tickets, notes payable to bearer or to order, and indorsed in blank ; subsequently it has been extended to ·bonds and other choses in action, in writing or represented by a certificate, when the entire equitable interest is assigned ; and in the very latest cases on the subject in this Commonwealth, it has been held that a note not negotiable, or if negotiable, not actually indorsed, but delivered, passes, with . a right to use the name of the administrator of the promisee, to collect it for the donee's own use," citing *Sessions* v. *Moseley*, 4 Cush. (Mass.) 87 ; *Bates* v. *Kempton*, 7 Gray (Mass.), 382 ; *Parish* v. *Stone*, 14 Pick. (Mass.) 198.

In the case last mentioned — *Parish* v. *Stone* — the same distinguished judge, speaking of the cases which had extended the doctrine of gifts *mortis causa* to include choses in action, delivered so as to operate only as a transfer by equitable assignment or a declaration of trust, says further, that " these cases all go on the assumption that a bond, note, or other

security is a valid subsisting obligation for the payment of a sum of money, and the gift is, in effect, a gift of the money by a gift and delivery of the instrument that shows its existence and affords the means of reducing it to possession." He had, in a previous part of the same opinion, stated that " the necessity of an actual delivery has been uniformly insisted upon in the application of the rules of the English law to this species of gift." p. 204.

In *Camp's Appeal*, 36 Conn. 88, the Supreme Court of Errors of Connecticut held that a delivery to a donee of a savings-bank book, containing entries of deposits to the credit of the donor, with the intention to give to the donee the deposits represented by the book, is a good delivery to constitute a complete gift of such deposits, on the general ground that a delivery of a chose in action that would be sufficient to vest an equitable title in a purchaser is a sufficient delivery to constitute a valid gift of such chose in action, without a transfer of the legal title. That was the case of a gift *inter vivos*. But the court say, referring to the case of *Brown* v. *Brown*, 18 Conn. 410, as having virtually determined the point: " It is true that was a donation *causa mortis*, but the principle involved is the same in both cases, as there is no difference in respect to the requisites of a delivery between the two classes of gifts." And so Wilde, J., delivering the opinion of the court in *Grover* v. *Grover*, 24 Pick. (Mass.) 261, 264, expressly declared that " a gift of a chose in action, provided no claims of creditors interfere to affect its validity, ought to stand on the same footing as a sale;" that the title passed, and the gift became perfected by delivery and acceptance; that there was, therefore, " no good reason why property thus acquired should not be protected as fully and effectually as property acquired by purchase;" and showed, by a reference to the cases, that there was no difference in this respect between gifts *inter vivos* and *mortis causa*.

In respect to the opinion in this case, it is to be observed, that it cites with approval the case of *Wright* v. *Wright*, 1 Cow. (N. Y.) 598, in which it was decided that the promissory note, of which the donor himself was maker, might be the subject of a valid gift *mortis causa*, though the concurrence was not

upon that point.    That case, however, has never been followed.
It was expressly disapproved and disregarded by the Supreme
Court of Errors of Connecticut in *Raymond* v. *Sellick*, 10
Conn. 480, Waite, J., delivering the opinion of the court; it
had been expressly questioned and disapproved by Shaw, C. J.,
in *Parish* v. *Stone*, 14 Pick. (Mass.) 198, and was distinctly
overruled by the Court of Appeals of New York in *Harris* v.
*Clark*, 3 N. Y. 93.    In the latter case it was said: " Gifts,
however, are valid without consideration or actual value paid
in return.    But there must be delivery of possession.    The
contract must have been executed.    The thing given must be
put into the hands of the donee, or placed within his power by
delivery of the means of obtaining it.    The gift of the maker's
own note is the delivery of a promise only, and not of the
thing promised, and the gift therefore fails.    Without delivery,
the transaction is not valid as an executed gift; and without
consideration, it is not valid as a contract to be executed.    The
decision in *Wright* v. *Wright* was founded on a supposed dis-
tinction between a gift *inter vivos* and a *donatio mortis causa.*
But there appears to be no such distinction.    A delivery of
possession is indispensable in either case."

The case from which this extract is taken was very thor-
oughly argued by Mr. John C. Spencer for the plaintiff, and
Mr. Charles O'Connor for the defendant, and the judgment of
the court states and reviews the doctrine on the subject with
much learning and ability.    It was held that a written order
upon a third person, for the payment of money, made by the
donor, was not the subject of a valid gift, either *inter vivos* or
*mortis causa;* and the rule applicable in such cases, as conceded
by Mr. O'Connor, was stated by him, as follows: " ' Delivery
to the donee of such an instrument as will enable him, by
force of the instrument itself, to reduce the fund into pos-
session, will suffice,' is the plaintiff's doctrine.    This might
safely be conceded.    It might even be conceded that a delivery
out of the donor's control of an instrument, without which
*he* could not recover the fund from his debtor or agent, would
also suffice."

The same view, in substance, was taken in deciding *Hewitt*
v. *Kaye*, Law Rep. 6 Eq. 198, which was the case of a check

on a banker, given by the drawer *mortis causa*, who died before it was possible to present it, and which was held not to be valid.    Lord Romilly, M. R., said : " When a man on his death-bed gives to another an instrument, such as a bond, or promissory note, or an I O U, he gives a chose in action, and the delivery of the instrument confers upon the donee all the rights to the chose in action arising out of the instrument. That is the principle upon which *Amis* v. *Witt*, 33 Beavan, 619, was decided, where the donor gave the donee a document by which the bankers acknowledged that they held so much money belonging to the donor at his disposal, and it was held that the delivery of that document conferred upon the donee the right to receive the money.    But a cheque is nothing more than an order to obtain a certain sum of money, and it makes no difference whether the money is at a banker's or anywhere else.    It is an order to deliver the money, and if the order is not acted upon in the lifetime of the person who gives it, it is worth nothing."

Accordingly the Vice-Chancellor, *In re Beak's Estate*, Law Rep. 13 Eq. 489, refused to sustain as valid the gift of a check upon a banker, even although its delivery was accompanied by that of the donor's pass-book.

The same rule, as to an unpaid and unaccepted check, was followed in *The Second National Bank of Detroit* v. *Williams*, 13 Mich. 282.    The principle is that a check upon a bank account is not of itself an equitable assignment of the fund. *Bank of the Republic* v. *Millard*, 10 Wall. 152; but if the banker accepts the check, or otherwise subjects himself to liability as a trustee, prior to the death of the donor, the gift is complete and valid. *Bromley* v. *Brunton*, Law Rep. 6 Eq. 275.

Contrary decisions have been made in respect to donations *mortis causa* of savings-bank books, some courts holding that the book itself is a document of title, the delivery of which, with that intent, is an equitable assignment of the fund. *Pierce* v. *Boston Savings Bank*, 129 Mass. 425 ; *Hill* v. *Stevenson*, 63 Me. 364 ; *Tillinghast* v. *Wheaton*, 8 R. I. 536.    The contrary was held in *Ashbrook* v. *Ryon*, 2 Bush (Ky.), 228, and in *Mc-Gonnell* v. *Murray*, Irish Rep. 3 Eq. 460.

That a delivery of a certificate of deposit, such as that de-

scribed in the record in this case, might constitute a valid *dona-tio mortis causa*, does not admit of doubt. It was so decided in *Amis* v. *Witt*, 33 Beav. 619; *Moore* v. *Moore*, Law Rep. 18 Eq. 474; *Hewitt* v. *Kaye*, 6 id. 198; *Westerlo* v. *De Witt*, 36 N. Y. 340. A certificate of deposit is a subsisting chose in action and represents the fund it describes, as in cases of notes, bonds, and other securities, so that a delivery of it, as a gift, consti-tutes an equitable assignment of the money for which it calls.

The point, which is made clear by this review of the decisions on the subject, as to the nature and effect of a delivery of a chose in action, is, as we think, that the instrument or docu-ment must be the evidence of a subsisting obligation and be delivered to the donee, so as to vest him with an equitable title to the fund it represents, and to divest the donor of all present control and dominion over it, absolutely and irrevocably, in case of a gift *inter vivos*, but upon the recognized conditions subsequent, in case of a gift *mortis causa;* and that a delivery which does not confer upon the donee the present right to reduce the fund into possession by enforcing the obligation, according to its terms, will not suffice. A delivery, in terms, which confers upon the donee power to control the fund only after the death of the donor, when by the instrument itself it is presently payable, is testamentary in character, and not good as a gift. Further illustrations and applications of the principle may be found in the following cases: *Powell* v. *Hellicar*, 26 Beav. 261; *Reddel* v. *Dobree*, 10 Sim. 244; *Farquharson* v. *Cave*, 2 Colly. C. C. 356; *Hatch* v. *Atkinson*, 56 Me. 324; *Bunn* v. *Markham*, 7 Taunt. 224; *Coleman* v. *Parker*, 114 Mass. 30; *Wing* v. *Merchant*, 57 Me. 383; *McWillie* v. *Van Vacter*, 35 Miss. 428; *Egerton* v. *Egerton*, 17 N. J. Eq. 419; *Michener* v. *Dale*, 23 Pa. St. 59.

The application of these principles to the circumstances of the present case requires the conclusion that the appellant ac-quired no title to the fund in controversy, by the indorsement and delivery of the certificate of deposit. The certificate was payable on demand; and it is unquestionable that a delivery of it to the donee, with an indorsement in blank, or a special indorsement to the donee, or without indorsement, would have transferred the whole title and interest of the donor in the fund

represented by it, and might have been valid as a *donatio mortis causa*. That transaction would have enabled the donee to reduce the fund into actual possession, by enforcing payment according to the terms of the certificate. The donee might have forborne to do so, but that would not have affected his right. It cannot be said that obtaining payment in the lifetime of the donor would have been an unauthorized use of the instrument, inconsistent with the nature of the gift; for the gift is of the money, and of the certificate of deposit, merely as a means of obtaining it. And if the donee had drawn the money, upon the surrender of the certificate, and the gift had been subsequently revoked, either by the act of the donor or by operation of law, the donee would be only under the same obligation to return the money, that would have existed to return the certificate, if he had continued to hold it, uncollected.

But the actual transaction was entirely different. The indorsement, which accompanied the delivery, qualified it, and limited and restrained the authority of the donee in the collection of the money, so as to forbid its payment until the donor's death. The property in the fund did not presently pass, but remained in the donor, and the donee was excluded from its possession and control during the life of the donor. That qualification of the right, which would have belonged to him if he had become the present owner of the fund, establishes that there was no delivery of possession, according to the terms of the instrument, and that as the gift was to take effect only upon the death of the donor, it was not a present executed gift *mortis causa*, but a testamentary disposition. The right conferred upon the donee was that expressed in the indorsement; and that, instead of being a transfer of the donor's title and interest in the fund, as established by the terms of the certificate of deposit, was merely an order upon the bank to pay to the donee the money called for by the certificate, upon the death of the donor. It was, in substance, not an assignment of the fund on deposit, but a check upon the bank against a deposit, which, as is shown by all the authorities and upon the nature of the case, cannot be valid as a *donatio mortis causa*, even where it is payable *in presenti*, unless paid or accepted

while the donor is alive ; how much less so, when, as in the present case, it is made payable only upon his death.

The case is not distinguishable from *Mitchell* v. *Smith*, 4 De G., J. & S. 422, where the indorsement upon promissory notes, claimed as a gift, was, " I bequeath — pay the within contents to Simon Smith, or his order, at my death." Lord Justice Turner said : " In order to render the indorsement and delivery of a promissory note effectual they must be such as to enable the indorsee himself to indorse and negotiate the note. That the respondent, Simon Smith, could not have done here during the testator's life." It was accordingly held that the disposition of the notes was testamentary and invalid.

It cannot be said that the condition in the indorsement, which forbade payment until the donor's death, was merely the condition attached by the law to every such gift. Because the condition, which inheres in the gift *mortis causa*, is a subsequent condition, that the subject of the gift shall be returned if the gift fails by revocation ; in the mean time the gift is executed, the title has vested, the dominion and control of the donor has passed to the donee. While here, the condition annexed by the donor to his gift is a condition precedent, which must happen before it becomes a gift, and, as the contingency contemplated is the donor's death, the gift cannot be executed in his lifetime, and, consequently, can never take effect.

This view of the law was the one taken by the Circuit Court as the basis of its decree, in which we accordingly find no error. It is, accordingly,

*Affirmed.*

MR. JUSTICE MILLER did not sit in this case, nor take any part in deciding it.