## DWYER v. O'NEILL.

(Third Division. Valdez. January 19, 1921.)

No. C–219.

Gifts ⬤⟜62(2)—Descent and Distribution—Executors and Administrators.

Martin, being sick and in contemplation of death, placed his money, securities, and jewelry in the possession of O'Neill, with instruction to pay the expenses of his sickness and burial, to send $100 to his wife and deliver the remainder thereof to his sister, after his death. Martin died. Thereafter Dwyer was appointed administrator of his estate, and brought this action to recover possession of the personal property for distribution under the statute. *Held*, the attempted gift by Martin failed, because there was no such delivery of the money or property as to constitute a valid gift causa mortis.

Charles Martin, on August 8, 1920, being seriously ill, in contemplation of death, gave to H. I. O'Neill one check drawn on the First Bank of Cordova, of Cordova, Alaska, for $704.48; one time check drawn on the Copper River & Northwestern Railway Company, for $130.60; money in the sum of $12.35; one gold watch of unknown value; and one gold ring of unknown value.

Thereupon this defendant immediately went into and took possession of all of said property, and on the said 8th day of August, 1920, cashed the said check drawn on the First Bank of Cordova, and received and took the money therefor in the full amount mentioned in said check. Defendant also took immediate possession of the said sum of $12.35 in money and of the said gold watch and gold ring, and also at said time took immediate possession of the said time check drawn on the said Copper River & Northwestern Railway Company, the same be-

---

⬤⟜See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing then and there duly assigned by the said Charles Martin to this defendant, and thereafter defendant cashed said time check and took into his possession the amount .thereof in money. At said time and place, when the said Charles Martin delivered all of said property to defendant, he instructed defendant to make the following disposition of the same: First, to pay his funeral expenses and hospital fees and physician's and surgeon's fees and charges for his present illness; second, to send $100 of said money to Mrs. Martin, a native woman, at Chitina, Alaska; third, to send to his sister, Mrs. Angel Anderson, residing at Dollar Bay, Michigan, the said gold watch and gold ring and whatever sum of money remained after the above-mentioned charges were paid.

Thereafter, and on the 14th day of August, 1920, at Cordova, Alaska, the said Charles Martin died of said illness. The said O'Neill, subsequent to the death of said Martin, paid to Mrs. Martin the sum of $100, funeral expenses amounting to $217, and doctors' and hospital bills of $125, making a total so disposed of of $442, and he now has on hand a balance of $405.43 and the said gold watch and ring. Subsequently V. J. Dwyer was appointed administrator, and brings this action to compel payment of said money and the turning over of said property to the estate.

Frank H. Foster, of Cordova, for plaintiff.

Donohoe & Dimond, of Valdez, for defendant.

BROWN, District Judge. There is no dispute as to the facts. The only question is whether the above-attempted disposal of the property by said Martin before his death constitutes a gift causa mortis, and said money and property shall in law be considered the property of his sister, Mrs. Angel Anderson, or whether it should be considered as part of his personal estate, of which his wife, Mrs. Martin, would be the sole heir.

It was suggested by counsel that Mrs. Martin would be delivered of a child, a posthumous child of said Charles Martin, but there is no direct evidence of this.

Defendant in his answer states .that Mrs. Martin is a native woman residing at Chitina, Alaska, but why this should make any difference I am unable to see. There is no light thrown on the question of the character of Mrs. Martin, or why she

should be disinherited by her husband, who was bound in honor and by the law to protect and support her.

"A gift of this nature cannot avail against creditors, and the donee takes subject to the right of the personal representative to reclaim it, if necessary for the payment of the debts of the deceased, for no man who is unable to pay his debts may give away his property." 20 Cyc. 1243.

If this be true with regard to mere creditors, how much higher and stronger reason there should be to uphold that far more sacred and binding obligation, the right of the wife to the support and protection of the husband.

"Although a husband may have absolute control of his property during his life, to give and dispose of it as he sees fit, yet the better opinion is that he may not, in expectation of death, gratuitously dispose of it, with a view to defeat the widow's statutory rights therein, known as the widow's statutory dower, or distributive portion in the deceased husband's personal estate." 20 Cyc. 1242.

In this case there is no dower right involved, but there should be every reason and consideration of humanity and public policy to sustain the right of the wife to property in such a case. But it is not necessary to decide the case upon this ground, for the reason that in my opinion there was no such delivery of the money or property as to constitute a valid gift causa mortis. The checks and property were turned over to O'Neill, with instructions not to deliver them to the sister until after his death, and the said Martin might have demanded and received them back at any time before his death.

In the case of Basket v. Hassell, 107 U. S. 614, 2 Sup. Ct. 422, 27 L. Ed. 500, this being the leading case upon this subject and very much in point, the court, speaking through Mr. Justice Matthews, says as follows:

"The point, which is made clear by this review of the decisions on the subject, as to the nature and effect of a delivery of a chose in action. is, as we think, that the instrument or document must be the evidence of a subsisting obligation and be delivered to the donee, so as to vest him with an equitable title to the fund it represents, and to divest the donor of all present control and dominion over it, absolutely and irrevocably, in case of a gift inter vivos, but upon the recognized conditions subsequent, in case of a gift mortis causa; and *that a delivery which does not confer upon the donee the present right to reduce the fund into possession by enforcing the obligation, according to its terms, will not suffice. A delivery in terms, which confers upon the donee power to control*

*the fund only after the death of the donor, when by the instrument itself it is presently payable, is testamentary in character, and not good as a gift.* Further illustrations and applications of the principle may be found in the following cases: Powell v. Hellicar, 26 Beav. 261; Reddel v. Bobree, 10 Sim. 244; Farquharson v. Case, 2 Colly. C. C. 356; Hatch .v. Atkinson, 56 Me. 324; Bunn v. Markham, 7 Taunt. 224; Coleman v. Parker, 114 Mass. 30; Wing v. Merchant, 57 Me. 383; McWillie v. Van Vacter, 35 Miss. 428; Egerton v. Egerton, 17 N. J. Eq. 419; Michener v. Dale, 23 Pa. St. 59.

"The application of these principles to the circumstances of the present case requires the conclusion that the appellant acquired no title to the fund in controversy, by the indorsement and delivery of the certificate of deposit. The certificate was payable on demand; and it is unquestionable that a delivery of it to the donee, with an indorsement in blank, or a special indorsement to the donee, or without indorsement, would have transferred the whole title and interest of the donor in the fund represented by it, and might have been valid as a donatio mortis causa. That transaction would have enabled the donee to reduce the fund into actual possession, by enforcing payment according to the terms of the certificate. The donee might have foreborne to do so, but that would not have affected his right. It cannot be said that obtaining payment in the lifetime of the donor would have been an unauthorized use of the instrument, inconsistent with the nature of the gift; for the gift is of the money, and of the certificate of deposit, merely as a means of. obtaining it. And if the donee had drawn the money, upon the surrender of the certificate, and the gift had been subsequently revoked, either by the act of the donor or by operation of law, the donee would be only under the same obligation to return the money, that would have existed to return the certificate, if he had continued to hold it, uncollected.

"But the actual transaction was entirely different. The indorsement which accompanied the delivery, qualified it, and limited and restrained the authority of the donee in the collection of the money, so as to forbid its payment until the donor's death. The property in the fund did not presently pass, but remained in the donor, and the donee was excluded from its possession and control during the life of the donor. That qualification of the right, which would have belonged to him if he had become the present owner of the fund, establishes that there was no delivery of possession, according to the terms of the instrument, and that as the gift was to take effect only upon the death of the donor, it was not a present executed gift mortis causa, but a testamentary disposition."

In the case of Knight v. Tripp, 121 Cal. 678, 54 Pac. 268, the law as to gifts causa mortis is stated as follows:

"Whether the transaction constituted a valid gift causa mortis must depend upon what was said and done by Mrs. Cook at the time of the alleged transfer. Gifts causa mortis are not regarded

in the law with favor, since they are in contravention of the general rules prescribed for the testamentary disposition of property, and therefore should in all cases be established by clear and convincing proof of the requisites of such a gift. For the purpose of preventing frauds and perjuries, the statute requires a testamentary disposition of property to be made by a written instrument, executed with certain formalities; and, while a gift causa mortis is testamentary to the extent that it is made in contemplation of death, and becomes absolute only upon the death of the donor, it is at the same time subject to the rules governing a gift inter vivos. The actual delivery of the thing given is made the substitute for the formal writing required for a testamentary disposition, but without such delivery the words of the donor are unavailing to constitute a gift. 'Donatio perficitur possessione accipientis.' All gifts are necessarily inter vivos, for a living donor and a living donee are indispensable to a valid gift; but when the gift is made in contemplation of impending death, and as a provision for the donee in the event of such death, it is called a gift causa mortis. This designation of its character does not, however, change the elements requisite for ·rendering the gift complete. There can be no gift without an intention to give, and, a delivery, either actual or constructive, of the thing given. Civ. Code, §, 1146, defines a gift to be a transfer of personal property, made voluntarily, and without consideration; and the rule that mere words of gift are ineffective unless accompanied by a delivery to the donee of the thing given, if it is capable of delivery, is reproduced in section 1147. There must be both a purpose to give and the execution of this purpose. The purpose must be expressed, either orally or in writing, and it must be executed by the actual delivery to the donee of the thing given, or of the means of getting possession and enjoyment thereof."

I think that, O'Neill in the case at bar acted as the agent of the said Martin for the disposition of the property turned over to him, to be applied in the payment of his debts, etc., and the transaction was in effect an attempt at a testamentary disposition and he was not agent for the donee and there was no delivery to the donee or to any agent for her.

Judgment may be entered directing the defendant, H. I. O'Neill, to turn over said money and property to the plaintiff, as administrator.