VAN PELT, EXR., v. KING ET AL.

*Gifts—Facts necessary to consummate gift causa mortis— Sufficiency of delivery—Investing donee with present power and dominion essential—Evidence insufficient to establish gift causa mortis—Notes to be donee's if donor did not return from hospital.*

1. To constitute "gift *causa mortis,*" thing given must have been donor's, given when he was in peril of death or under apprehension of death from existing malady, and possession delivered to donee or some one for his use, with intention to vest title conditionally on donor's death, leaving sufficient assets to pay his debts.

2. While gift *causa mortis* is revocable and conditional and gift *inter vivos* is not, there is no difference in character of delivery required.

3. Attempted gift which does not vest donee with present power and dominion over it is ineffectual as gift, either *inter vivos* or *causa mortis.*

4. Essential element of delivery of gift is that title shall immediately vest in donee.

5. Evidence that donor gave notes to defendant with statement that if he did not return from hospital they were hers, *held* not to show gift *causa mortis.*

(Decided April 30, 1926.)

ERROR: Court of Appeals for Highland county.

*Mr. Cyrus Newby,* for plaintiff in error.
*Messrs. Wilson & Morrow,* for defendants in error.

MAUCK, P. J. Bert Van Pelt, as executor of Edwin G. Cox, brought his action to recover on two promissory notes made and delivered to the testator by Frank L. King and Mildred King. The defendants answered that "said Edwin G. Cox, being sick of chronic diarrhea, almost blind, and upwards of 82 years of age, having made arrangements to go to a hospital for medical treatment for said malady, on or about the —— day of July, 1922, then gave and delivered said note, together with another note, to said defendant Mildred King with these words, 'These notes are yours; I give them to you; I may ask you for them, if I come back from the hospital.' That said Mildred King accepted and took possession of said notes on said terms, and has ever since retained the possession thereof. That said Edwin G. Cox was that day taken to the hospital in an ambulance, and died in the hospital without recovering from said sickness and without having rescinded or revoked said gift, and died in about ten days from the date of said gift, on or about July 22, 1922."

This answer was met by a general denial. Trial was had without a jury, and judgment was rendered for the defendants. It is now sought to reverse that judgment.

It was agreed at the trial that at the time the notes in question were delivered to Mrs. King, Mr. Cox was of sufficient mental capacity to make a gift, that Mrs. King used no undue influence to secure such delivery, that Mr. Cox, a few days after such delivery, died of the malady from which he was then suffering, and that outside these notes he left sufficient assets to pay all debts and claims against his estate, including costs of administration.

The testimony tended to show that Mr. Cox was over 80 years old, in feeble health, and living with a tenant. He was suffering with dysentery. Dr. Hodson attended him at his home for three days, when on July 15 he was removed to a hospital. At the time of his going to the hospital, his chances of recovery were very poor. A few days earlier the tenant with whom he lived had called for some of his relatives to come, and among others who responded were the defendants Mr. and Mrs. King, the latter of whom was related to Mr. Cox's predeceased wife. On the 15th, before going to the hospital, he called for his papers, and had the attending physician pick out the notes in question. The physician handed the notes to Mr. Cox in the presence of Mrs. King. The decedent thereupon handed them to Mrs. King under these circumstances:

"He gave the notes to Mrs. King with the statement that if he did not return from the hospital

they were hers; if he did return he might call for them.''

This is the incident as testified to by Dr. Hodson.

There is an apparent variance between the facts pleaded and those proved. In the answer it is alleged that the decedent delivered the notes, saying, ''These notes are yours; I give them to you,'' employing strong and unconditional *verba de præsenti* to immediately vest title in the donee, while the language actually proved is that ''if he did not return from the hospital they were hers.''

Both sides to this controversy agree that the passing of the notes in question was not sufficient to constitute a gift *inter vivos,* and the only question is whether it was sufficient to constitute a gift *causa mortis.*

The general principles governing gifts of this character seem to be well settled, although great difficulty arises in applying these principles to specific cases. The substantive law of this state is in harmony with the current of authority. If there be any difference it lies in the fact that Ohio courts have expressed particular disfavor for such transactions, and sustain them only when they are supported by clear and convincing evidence. *Gano* v. *Fisk,* 43 Ohio St., 462, 3 N. E., 532, 54 Am. Rep., 819; *Flanders* v. *Blandy,* 45 Ohio St., 108, 12 N. E., 321.

We have nowhere found a better analysis of a gift *causa mortis* than that employed by the editor of American Law Reports in volume 3, p. 916:

''The concurrence of three things is essential to the consummation of a gift *causa mortis*: (1)

The thing given must have been of the personal goods of the donor; (2) it must have been given while the latter was in peril of death, or while he was under the apprehension of impending dissolution from an existing malady; and (3) the possession of the thing given must have been actually, or constructively, delivered to the donee, or to some one for his use, with the intention that the title should then vest conditionally on the death of the donor, leaving sufficient assets in addition to pay his debts.''

It may be taken for granted that the facts in this case meet all the requirements above set forth except the one relating to delivery, and it only remains to be determined whether the possession of the notes was given to Mrs. King ''with the intention that the title should then vest conditionally on the death of the donor.''

To support the theory of a complete delivery in the instant case the defendants in error cite many authorities to the effect that a gift *causa mortis* vests only a conditional title in the donee, subject to be divested by the express revocation of the donor or by his recovery from an impending illness, and argue that unless this conditional title is sustained until revocation is so made, the whole law of *causa mortis* gifts fails, and that to so hold is to wipe out the exact distinction made between gifts *causa mortis* and gifts *inter vivos*. This argument, however, misapprehends the real distinction between the two kinds of gifts. It is true that a gift *causa mortis* is revocable and conditional and that a gift *inter vivos* is irrevocable and unconditional, but it is not true that there is

any difference in the character of the delivery required.

"It is well settled that a gift *causa mortis,* to be valid, must be accompanied by an actual and complete delivery of the property by the donor to the donee, or to some one for him, made for the express purpose of consummating the gift. In this respect there is no difference between a gift *causa mortis* and a gift *inter vivos.*" 14 A. & E. Enc. of Law (2d Ed.), 1056.

So as an attempted gift that does not result in completely investing the donee with present power and dominion over the gift is ineffectual as a gift *inter vivos,* it is equally ineffectual as a gift *causa mortis.* 14 Enc. of Law, 1060; 12 Ruling Case Law, 959; 28 Corpus Juris, 634.

The able brief of the defendants in error bristles with authority that a gift *causa mortis* is conditional and revocable, and that such a gift may be consummated as well where the condition is expressed, and the right of revocation expressly reserved, as where the condition and the right of revocation are implied. These authorities would meet the question at issue if the defendants had in the case at bar proved the case pleaded by them. The difficulty is that the evidence showed not that the notes were delivered with an immediate vesting of title, subject to be divested at the election of the donor, but that they were handed to the donee, not to be instantly hers, but only thereafter to become hers in case the donor did not return from the hospital. An essential element of delivery of a gift of any kind is that title shall immediately vest in the donee, and

in this respect the evidence did not support the answer.

"Following the principles applicable to gifts *inter vivos* as to what constitutes delivery, a delivery of property sufficient to create a gift *causa mortis* must be such that the donor parts with all present control and dominion over it." 12 Ruling Case Law, 959.

Without undertaking to analyze and apply all the authorities cited, let us test this case by the two opinions most extensively quoted by the parties hereto. We refer to *Johnson* v. *Colley,* 101 Va., 414, 44 S. E., 721, 99 Am. St. Rep., 884, relied on by defendants in error, and *Basket* v. *Hassell,* 107 U. S., 602, 2 S. Ct., 415, 27 L. Ed., 500, relied on by plaintiff in error.

In the *Johnson case,* the delivery was of money to a third person with the injunction that if the owner died the third person must give it to the donee. The court held that this was a sufficient delivery because it vested the gift in the donee subject only to the condition that the donor die, and that the condition thus expressed was the tacit condition inherent in any gift of this character. The court did not hold that a delivery was complete if title was not vested, and did not consider that question. The syllabus in the case is, however, less explicit on the requisites of delivery than the authorities cited in this opinion, and to the extent, if any, that the *Johnson case* departs from the rule that an immediate vesting on delivery is essential to sustain a gift, we would decline to follow it. The Johnson opinion, however,

distinguished its facts from *Basket* v. *Hassell,* *supra,* upon which the plaintiff in error relies.

In the *Basket case,* as in the case at bar, the manual delivery direct to the donee was complete, but it was with the statement that it was to become effective when the donor died. It differed from the instant case in that title was not to vest until the donor's death, but it was identical with the instant case in that title did not vest at the time of the manual delivery. If the manual delivery is accompanied by language showing that title does not immediately vest, it is unimportant whether such vesting is postponed until the donor's death or until some other time. It is the failure to at once vest that renders the delivery ineffective to accomplish the gift, and it was upon this principle that the *Basket case* was decided. The court reviews the authorities at length and says, at page 614 of 107 U. S., (2 S. Ct., 422 [27 L. Ed., 500]) :

"The point, which is made clear by this review of the decisions on the subject, as to the nature and effect of a delivery of a chose in action, is, as we think, that the instrument or document must be the evidence of a subsisting obligation and be delivered to the donee, so as to vest him with an equitable title to the fund it represents, and to divest the donor of all present control and dominion over it, absolutely and irrevocably, in case of a gift *inter vivos,* but upon the recognized conditions subsequent, in case of a gift *causa mortis;* and that a delivery which does not confer upon the donee the present right to reduce the fund into

possession by enforcing the obligation, according to its terms, will not suffice.''

Applying this principle to the case at bar, we find that, while manual custody of the notes in question was given to Mrs. King, the delivery did not confer upon her ''the present right to reduce the fund into possession,'' because such right was postponed by the qualification that it was to be hers only at that uncertain time in the future when, if at all, the donor should not return from the hospital. Clearly, at the moment Mrs. King received the notes she was not vested, conditionally or otherwise, with dominion over them, and for this reason she does not show a consummated gift. This is not because she might subsequently have been divested of title, but because she never became vested therewith.

The defendants, therefore, failed to support their answer with any effective testimony, and on the undisputed evidence judgment should have been rendered for the plaintiff. The judgment is accordingly reversed, and this court, proceeding to render the judgment that ought to have been rendered in the common pleas, now enters judgment for the executor.

*Judgment reversed.*

SAYRE and MIDDLETON, JJ., concur.