ESTATE OF JUDITH C. DINELL, DECEASED, FIRST NATIONAL CITY BANK, JUDY NAN HACOHEN AND TOM DINELL, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3695-69.   Filed April 17, 1972.

*George G. Vest* and *Dorrance Sexton, Jr.,* for the petitioners.
*Jay S. Hamelburg,* for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in estate tax in the amount of $22,536.83. The primary issue is whether the transfer made by the decedent to her two children of a reversionary interest in a trust created by the decedent was made by decedent in contemplation of death with the result that the value of such reversionary interest is to be included in her gross estate under the provisions of section 2035 of the Internal Revenue Code of 1954. Also in issue is the question of the amount of the deduction to which the estate is entitled on account of administration expenses.

### FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

At the time of the filing of the petition herein First National City Bank had its principal office at New York, N.Y. At that time the legal residence of Judy Nan Hacohen was Rowayton, Conn., and the legal residence of Tom Dinell was Honolulu, Hawaii.

Judith C. Dinell, hereinafter referred to as the decedent, was a resident of Norwalk, Conn. She died on September 18, 1965, at the age of 72 years. The Federal estate tax return was filed with the district director of internal revenue, Hartford, Conn.

The decedent had two children, Judy Nan Hacohen and Tom Dinell.

The decedent survived her husband Monroe L. Dinell who died on October 13, 1956.

Under the provisions of the will of Monroe L. Dinell, two-thirds of his residuary estate was placed in trust, with income to the decedent for life, the remainder as decedent should appoint by will, and if decedent did not exercise such power of appointment, then the residuary estate was to be divided into two equal shares, one for his daughter Judy Nan Hacohen and one for his son Tom Dinell, with income to them for life.

On December 4, 1958, the decedent executed her last will and testament. Therein she specifically stated that it was not her intention to exercise any power of appointment which she might have under the provisions of the will of her deceased husband Monroe L. Dinell.

In her will the decedent bequeathed all her tangible personal property to her children in equal shares. Therein she provided for specific bequests of $50,000 each to her daughter Judy Nan Hacohen and to her son Tom Dinell, if they survived her. Therein it was provided that the residue of her estate should be held in trust, the same to be divided into two equal shares for her two children, with each child entitled to no less than 50 per cent of the net income for life, with a special power of appointment in each child exercisable by will. Judy knew that she and Tom were the beneficiaries under her mother's will.

On March 30, 1959, decedent established an irrevocable and unamendable trust of personal property, naming the First National City Bank of New York as trustee and her two children as equal income beneficiaries for the duration of the trust. Such instrument provided for a reversionary interest as follows:

(d) Upon the death of the Grantor or upon the expiration of eleven years from the date of this Agreement, whichever event shall last occur, this trust shall terminate and the Trustee shall transfer and pay over all of the then existing principal trust property to the Executor or other personal representative of the estate of the Grantor to become and be disposed of as a part of such estate.

The trust instrument further provided that if Judy should die during the term of the trust, her one-half of the net income was to be paid to or for the use of her children, and if Tom should die during the term of the trust his one-half of the income was to be paid to or for the use of his widow.

The decedent filed a gift tax return for the calendar year 1959 reporting a gift to her son and daughter accomplished by the above trust, valuing such gift at $46,909.04, and reporting gift tax due in the amount of $450.

On June 30, 1964, decedent executed a document in which she made reference to the above reversionary interest contained in the

instrument of March 30, 1959, and assigned such reversionary interest in the trust to her two children as follows:

WHEREAS, the undersigned, Judith C. Dinell, desires to make a gift of said remainder interest to her children, Judy Nan Hacohen and Tom Dinell;

Now THEREFORE, the undersigned, JUDITH C. DINELL, does by these presents deliver, sell, assign, transfer and set over unto JUDY NAN HACOHEN and TOM DINELL, in equal shares, all of her right, title and interest of every kind, nature and description, whether vested or contingent, in and to the principal, income and remainder of the trust established under said Trust Agreement dated March 30, 1959 of which First National City Bank is the duly qualified and acting Trustee; and

The undersigned, JUDITH C. DINELL, does hereby constitute and appoint the said JUDY NAN HACOHEN and TOM DINELL, her true and lawful attorneys in her name, place and stead, to ask, demand, sue for, attach, levy, recover and receive all sums of money, securities and property of every kind and description which now or may hereafter become due, owing and payable for, or on account of the trust remainder and interest above assigned, giving and granting unto the said attorneys full power and authority to do and perform all and every act and thing whatsoever requisite and necessary, as fully, to all intents and purposes, as she might or could do, if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that her said attorneys or their substitute shall lawfully do, or cause to be done by virtue hereof.

On June 30, 1964, decedent executed a first codicil to her will revoking the provisions thereof which provided for specific bequests of $50,000 each to her son and daughter, but confirming and ratifying the will in all other respects.

The decedent filed a gift tax return for the calendar year 1964 reporting a value of $161,281.73 for the gift of the reversionary interest which she transferred to her children on June 30, 1964, and reporting a gift tax liability for the year of $29,967.92.

At the time of the transfer of the reversionary interest in question on June 30, 1964, the decedent was in good health.

The decedent was survived by her daughter Judy Nan Hacohen, her son Tom Dinell and 11 grandchildren. Judy Nan Hacohen and Tom Dinell received no money from their father's estate prior to the death of their mother in 1965.

The decedent's daughter Judy married Nahum Hacohen on July 24, 1955. They have four children who were born in 1958, 1960, 1963, and 1965. At the time of their marriage Mr. Hacohen was unemployed. Shortly after their marriage the Hacohens moved to Israel where Mr. Hacohen took employment. When Monroe L. Dinell died in the fall of 1956, the decedent paid the transportation expenses for her daughter to return from Israel to the United States for the funeral.

At the end of 1958 the Hacohens returned to the United States where Mr. Hacohen was employed in Los Angeles. The decedent paid

for all transportation expenses and for shipment of household goods. During the time the Hacohens lived in California the decedent assisted her daughter financially by paying for furnishings for her apartment, purchasing food for the family during her visits to California, and making cash gifts to both Judy and her husband, which were used for purchase of daily necessaries. During their stay in California the Hacohens rented three successively less expensive apartments at monthly rentals of $135, $125, and $115, respectively. Mr. Hacohen worked on a commission basis and paid the rental when he received commissions. At other times the decedent paid the rent. Thereafter the Hacohens bought a home in Los Angeles, the monthly charge for which was only $94 because of the fact that Judy made a large down-payment using her own securities as collateral. At that time Judy owned certain securities of a value of about $15,000, which produced an average annual income of about $1,000 or less. This income was not used for living expenses. It was left to grow as a "nest egg" upon the advice of the decedent. These securities were worth more than $15,000 in 1964.

When the decedent created the trust on March 30, 1959, she indicated to her daughter Judy that her reason was to give her and her brother Tom a steady income instead of decedent's making periodic gifts to her and Tom. The income which Judy received from this trust increased each year from a low of $1,371.27 in 1959 to $4,495.92 in 1965.

The decedent continued to give Judy money after the creation of the trust. The Hacohens moved from California to Connecticut in January 1963 when Mr. Hacohen was transferred to New York, and lived in the decedent's home from January to June, free of rent. Decedent also paid for the maid who cleaned the house once each week and for the car expenses. The Hacohens then rented an unfurnished house in South Norwalk, Conn. The decedent bought the furnishings for them.

From 1958 and afterwards the decedent gave Judy and her husband gifts totaling from $1,000 to $2,000 per year. Judy was constantly concerned about her financial security and discussed it with the decedent. At the time of making the transfer of the reversionary interest on June 30, 1964, the decedent told Judy that the capital of the trust would go to Judy and Tom at the time of decedent's death or at the end of 11 years, whichever came later and that she hoped that this would make Judy feel more secure knowing that this would be theirs whatever might happen to the rest of decedent's assets. Judy also knew that the decedent at that time amended her will to delete the specific bequests of $50,000 to her and her brother.

In the decedent's estate tax return no amount was included in the gross estate on account of the transfer on June 30, 1964, of the reversionary interest in the trust created by decedent on March 30, 1959.

In the notice of deficiency the respondent increased the gross estate on account of such transfer, stating:

It is determined that the transfer on June 30, 1964 of a reversionary interest in the trust created by Judith C. Dinell March 30, 1959, by decedent to her two children, Judy Nan Hacohen and Tom Dinell, was made by decedent in contemplation of her death and consequently the fair market value of said reversionary interest on the optional valuation date, $159,110.11 is includable in the gross estate under Section 2035 of the Internal Revenue Code.

#### ULTIMATE FINDING OF FACT

The dominant motive of the decedent in transferring the reversionary interest in the trust to her children on June 30, 1964, was to substitute such transfer for a testamentary disposition of such interest.

#### OPINION

The issue to be decided is whether the transfer by the decedent to her children on June 30, 1964, of her reversionary interest in the trust which she had set up on March 30, 1959, was made in contemplation of death, requiring that the value of such interest be included in her gross estate under section 2035 of the Internal Revenue Code of 1954.[1]

The parties are in agreement that the value of such reversionary interest on the optional valuation date was $159,110.11, as determined by the respondent. The parties have also stipulated that at the time of the transfer of the reversionary interest the decedent was in good health. The petitioner submitted considerable evidence regarding the activities of the decedent about the time of the transfer of the reversionary interest, including evidence of extensive foreign travel in the spring and fall of 1964. However, at the trial counsel for the respondent specifically stated that the decedent's health was not in

---

[1] Sec. 2035 of the Code provides as follows :
SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) APPLICATION OF GENERAL RULE.—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment) ; but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.

issue and that it was not his contention that at the time of the gift the decedent was in fear of imminent death. It is his position that there may be a transfer in contemplation of death even though the transferor is not in fear of imminent death, citing, among other things, *United States* v. *Wells*, 283 U.S. 102, and section 20.2035-1(c) of the Estate Tax Regulations.[2] He contends that the record here clearly demonstrates that the transfer was a part of decedent's overall testamentary scheme and therefore was made in contemplation of death, within the meaning of the statute.

The petitioner contends that the transfer by decedent in 1964 of the reversionary interest in the trust created in 1959 constituted the completion of a gift to her children initiated by the creation of the trust, that both actions were motivated by a desire to continue to make gifts to her children and to give them some immediate assurance that funds would always be available for their support, and that therefore such transfer was not made in contemplation of death within the meaning of the statute.

In reference to the phrase "contemplation of death" the Supreme Court stated in *United States* v. *Wells, supra:*

It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. The provision is not confined to gifts *causa mortis*, which are made in anticipation of impending death, are revocable, and are defeated if the donor survives the apprehended peril. *Basket* v. *Hassell*, 107 U.S. 602, 609, 610.[12] The statutory description embraces gifts *inter vivos*, despite the fact that they are fully executed, are irrevocable and indefeasible. The quality which brings the transfer within the statute is indicated by the context and manifest purpose. Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. *Nichols* v. *Coolidge*, 274 U.S. 531, 542; *Milliken* v. *United States*, ante, p. 15. As the transfer may otherwise have all the indicia of a valid gift *inter vivos*, the differentiating factor must be found in the transferor's motive. Death must be "contemplated," that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. * * *

As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the

---

[2] Sec. 20.2035-1(c) of the regulations provides as follows:

The phrase "in contemplation of death," as used in this section, does not have reference to that general expectation of death such as all persons entertain. On the other hand, its meaning is not restricted to an apprehension that death is imminent or near. A transfer "in contemplation of death" is a disposition of property prompted by the thought of death (although it need not be solely so prompted). A transfer is prompted by the thought of death if (1) made with the purpose of avoiding death taxes, (2) made as a substitute for a testamentary disposition of the property, or (3) made for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized in order to determine whether or not such thought prompted the disposition.

absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is "near at hand."

If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts *inter vivos* which spring from a different motive. * * * It is common knowledge that a frequent inducement is, not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.

* * * There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute.

[Footnote omitted.]

Thus, the question of the dominant or impelling motive of the donor is a question of fact to be determined in each case upon the basis of the particular circumstances. See also *Allen* v. *Trust Co.*, 326 U.S. 630.

Upon a consideration of the record as a whole, it is our conclusion that the petitioner has failed to show that the decedent's dominant motive for the transfer in question was one associated with life. Indeed, there is substantial evidence in the record which we think is sufficient to show that the dominant motive for such transfer was one associated with death within the meaning of section 2035 of the Code, and we have so found.

It is true that decedent had over a period of years made gifts to her daughter for the purpose of relieving her financial situation. And, we think that the trust which was set up in 1959 by the decedent, providing that the income therefrom should be payable to her two children, was motivated by a desire to provide the children with current financial assistance. However, we do not believe that the petitioner's transfer to her children in 1964 of the reversionary interest in the trust principal had the same motivation. The children would not actually receive the economic benefits of such reversionary interest until after their mother's death. It may well be, as the petitioner states, that the chil-

dren immediately acquired the right to pledge the trust assets for current obligations, but we are not persuaded, nor is there any evidence which would indicate, that this was the purpose of the transfer of such reversionary interest.

Petitioner further contends that the dominant motive of the decedent in making the transfer in question was to relieve her daughter's concern for her future financial security by assuring her that she would receive the principal of the trust after the decedent's death. However, we think the circumstances indicate that the motive for the transfer was to substitute for a testamentary disposition of such reversionary interest.

Under its terms the trust was to terminate upon the death of the grantor or upon the expiration of 11 years from the date of its creation, whichever event should last occur. At that time the principal of the trust was to revert to the decedent's estate and be disposed as part of such estate. Under the decedent's will the reversionary interest would have become part of the residue of her estate and would have been held in trust for the benefit of her children. Thus, under the terms of the trust and the decedent's will, the interest in question would have reverted to decedent's estate, would have constituted a part thereof for estate tax purposes, and would have ultimately been distributed for the benefit of her children. In view, therefore, of the fact that the future financial security of decedent's children was already provided for under decedent's estate plan prior to the transfer in question, we think it somewhat tenuous to suggest that decedent's dominant motivation for making the transfer was to assure her children in this respect. In this connection we think it highly significant that at the time the reversionary interest was transferred to the children, decedent, by codicil, deleted the provisions of her will which provided for specific bequests of $50,000 to each child. It seems to us that the net effect of such substitution was merely to rid her estate of the reversionary interest for estate tax purposes.

It should be added that we cannot accept the petitioner's contention that the transfer of the reversionary interest constituted the completion of a gift transaction which commenced with the setting up of the trust in 1959. These were not integrated transactions similar to those involved in *Allen* v. *Trust Co., supra*. The trust when created provided for the payment of income to the children, whereas, the transfer of the reversionary interest in 1964 transferred the corpus. The petitioner did not, as was true in *Allen* v. *Trust Co., supra*, intend, at the time of the setting up of the trust, to transfer the corpus to the children.

In view of the above it is our opinion that this case represents that situation where a decedent, having made one plan for the testamentary

disposition of her property, later makes a different one to avoid estate taxes. Accordingly, the transfer was one made in contemplation of death within the meaning of section 2035 of the Code. We therefore approve the respondent's determination that the value of the reversionary interest is includable in the estate of the decedent.

The parties are in agreement that the amount of deductible administration expenses of the estate can be determined in the recomputation under Rule 50.

*Decision will be entered under Rule 50.*