MARY MILLER HILL, Executrix of the Estate of Landreth Hill, Deceased, v. J. CLYDE BAKER.

(*August* 6, 1953.)

Tried before RICHARDS, P. J., without a jury.

*James M. Tunnell* (of Tunnell and Tunnell) for the plaintiff.

*Ralph S. Baker* for the defendant.

Superior Court for Sussex County, No. 378, Civil Action, 1952.

RICHARDS, P. J.:

It appeared from the evidence introduced before me that Landreth Hill died testate on April 4, 1952; that he was never married and lived alone in a house which he owned near Concord; that for a number of years prior to his death he was engaged in trapping around Concord and Seaford, and during a portion of the time he was engaged in this undertaking he was assisted by his nephew, J. Clyde Baker, the defendant in this suit, who is the son of his sister, Mary J. Baker; that when J. Clyde Baker decided to devote his time to other employment he stopped trapping with his uncle regularly and left all of his traps with him, but continued to help him from time to time by taking him to and from the trapping area and rowing the boat for him to visit his traps; that Landreth Hill continued to rely upon J. Clyde Baker for favors practically up to the time of his death; that prior to his death, namely, July 28, 1943, the said Landreth Hill made his will which was duly admitted to probate on April 10, 1952, and by which he devised and bequeathed all of his property, real, personal and mixed, of whatsoever kind and wheresoever found, to his nephew, Charles Lewis Hill, to have and to hold and to dispose of as he deemed advisable; that Mary J. Baker lived only a short distance from her brother, Landreth Hill, who visited her almost daily and had many meals at her house; that for a period of four years prior to his death her said brother had numerous conversations with her during which he told her that he had given J. Clyde Baker his "money which he had in the bureau"; that Landreth Hill also had conversations prior to his death with his niece, Mildred E. Morris, her husband, Ronald E. Morris, and Mabel B. Baker, wife of the defendant, J. Clyde Baker, during which he told them that he had given J. Clyde Baker his "money which

he had in the bureau"; that about ten days before he died he sent word to J. Clyde Baker, by his sister, Mary J. Baker, that "he wanted Clyde to come and get what was his"; that on Sunday, March 30, 1952, the defendant, J. Clyde Baker, and Mabel B. Baker, his wife, Mildred E. Morris and Ronald E. Morris, her husband, visited Landreth Hill at his house and found him unwell but able to be up and around the house; that while Mrs. Morris and Mrs. Baker were out in the yard with the children, Landreth Hill insisted that Ronald E. Morris and the defendant, J. Clyde Baker, go upstairs with him, and when they got upstairs he went to a room opposite his bed room, unlocked a bureau drawer and took from it a pocketbook which he handed to J. Clyde Baker saying, "this is yours, take it with you"; that Clyde took the pocketbook and he and Landreth Hill counted the money found in it; that after they had finished counting the money they both said that it amounted to $840; that Clyde asked Landreth Hill if he could keep the money where it was, and Hill then gave him the key to the bureau drawer and told him to keep it; that Clyde then put the pocketbook and money back in the bureau drawer from which Landreth Hill had taken it, locked the drawer with the key which he had given him and put the key in his pocket; that on the following Friday, being April 4, 1952, Landreth Hill died; that after learning of his death J. Clyde Baker went to his house, unlocked the drawer in the bureau in which he, Clyde, had put the pocketbook and $840, with the key which the deceased had given him, and took out said pocketbook and $840.

The plaintiff contends that the pocketbook and money in question were in the possession of Landreth Hill at the time of his death, and became a part of his estate which at the time of his death passed, under the terms of his will, to his nephew, Charles Lewis Hill.

The plaintiff further contends that the conversations which the deceased had with his sister, Mary J. Baker, and the other members of his family, including the conversation and what took place between him and the defendant, J. Clyde Baker, on

March 30, 1952, were not sufficient to support a *donatio inter vivos* or a *donatio causa mortis*, because there was no delivery of the property to the donee, either actual or constructive.

The defendant takes the position that the evidence in this case not only supports a gift *inter vivos*, but that based upon the authorities cited in his brief, it is sufficient to constitute a gift *causa mortis*.

In the case of *Drummond v. Hopper*, 4 *Harr.* 327, the Court charged the jury that the first evidence of the ownership of personal property is possession; also that one in the possession of personal property who holds himself out to others as the owner and acts as the owner, is presumed in law to be the owner.

The possession of personal property, however, is only *prima facie* evidence of ownership, and never prevails against the true owner, *Wright v. Solomon*, 19 *Cal.* 64, 79 *Am. Dec.* 196, *Spraights v. Hawley*, 39 *N. Y.* 441, 100 *Am. Dec.* 452, *Clark v. Maloney*, 3 *Harr.* 68.

It is generally recognized that natural persons have a right to give away their property to anyone they care to; and when they do, unless it can be shown to have been induced by fraud or undue influence, only their creditors can impeach it. *Ridden v. Thrall*, 125 *N. Y.* 527, 26 *N. E.* 627, 11 *L. R. A.* 684, 21 *Am. St. Rep.* 758; *Rupp v. Western Life Indemnity Co.*, 138 *Ky.* 18, 127 *S. W.* 490, 29 *L. R. A., N. S.*, 675.

Every voluntary transfer of property from one person to another, without any consideration therefor constitutes a gift. Vol. 24 *Am. Jur.*, p. 730, § 2.

Generally speaking gifts are classified as gifts *inter vivos* and gifts *causa mortis*. A gift *inter vivos* is usually defined as one between living persons, consisting of a voluntary transfer of property from one living person to another without any valuable consideration perfected and made absolute during the lifetime of the parties. A gift *causa mortis* is usually defined as a gift of personal property made in expectation of the donors

death but which may be revoked by him, upon condition that the donee shall be entitled to the property if the donor dies as expected and the donee survives him. 24 *Am. Jur.*, p. 732, § 4.

■ The principle is well established by the authorities, that there must be an actual or constructive delivery of the property to the donee, in order for a gift *inter vivos* or *causa mortis* to be valid and effective.

*Basket v. Hassell*, 107 *U. S.* 602, 2 *S. Ct.* 415, 27 *L. Ed.* 500; *Hanstein v. Kelly*, 131 *N. J. Eq.* 132, 24 *A.* 2d 386; *Reardon v. Whalen*, 306 *Mass.* 579, 29 *N. E.* 2d 23; *Williamson v. Johnson*, 62 *Vt.* 378, 20 *A.* 279, 9 *L. R. A.* 277, 22 *Am. St. Rep.* 117; *Hudgens v. Tillman*, 227 *Ala.* 672, 151 *So.* 863; *Jean v. Jean*, 207 *Cal.* 115, 277 *P.* 313; *Avery v. Somsel*, 99 *Ind. App.* 470, 192 *N. E.* 907; *Brooks v. Mitchell*, 163 *Md.* 1, 161 *A.* 261, 84 *A. L. R.* 547; *Vincent v. Putman*, 248 *N. Y.* 76, 161 *N. E.* 425, affirmed 221 *App. Div.* 211, 223 ʰ*N. Y. S.* 361; *Highfield, for Use of State, v. Equitable Trust Co.*, 4 *W. W. Harr.* 509, 155 *A.* 724.

■ The deceased was not well on Sunday, March 30, 1952, when he insisted that the defendant, J. Clyde Baker, and Ronald E. Morris go upstairs with him while they were visiting him at his house, at which time he unlocked a bureau drawer, and taking from it a pocketbook handed it to J. Clyde Baker saying, "this is yours take it with you", but there is nothing in the evidence to indicate that he was in *extremis*, or that he was in expectation of death. This being the case, I am convinced that what took place at that time ·cannot be classed as a gift *causa mortis*.

For a period of four or five years before his death Landreth Hill had been telling his sister, Mary J. Baker, that he wanted J. Clyde Baker, the defendant, to have what was in the bureau drawer. Similar statements were made by him prior to his death to other members of his family. These conversations were an indication that he wanted the defendant to have what was in the bureau drawer. On March 30, 1952, he showed clearly what he wanted said defendant to have by taking a pocketbook from

the bureau drawer and handing it to him, in the presence of Ronald E. Morris, with the remark, "this is yours take it with you". After the deceased and the defendant counted the money found in the pocketbook and agreed that it amounted to $840, the defendant retained possession of it. When the defendant later asked the deceased if he could leave it there, the deceased handed the defendant the key to the drawer, and putting the pocketbook and money back in the drawer, the defendant locked the drawer with the key which the deceased had given him and put the key in his pocket. This amounted to a delivery of the pocketbook and money to the defendant. The fact that the defendant left the pocketbook and money at the home of deceased does not prove that he relinquished his possession of the property, or that the property was still in the possession of the deceased. As a matter of fact, it remained where the defendant put it until he took it out of the drawer after Landreth Hill died. During the time it remained in the drawer it was under the defendant's control as he had the key with which he locked the drawer in which he put it.

The plaintiff calls attention to the fact that the deceased had made his will in 1943, by which no money was bequeathed to the defendant. Reliance is placed upon the circumstance that during the conversations which the deceased had with his sister and other members of his family, he never mentioned his will, or told them how much money he had, but simply referred to the money which he had in the bureau.

The contention is made that the deceased knew how to make a gift at the time he had these conversations and had already made his will by which he had named the person whom he desired to have his property.

It is well established that a will does not become effective until after the death of the person by whom it is executed. Property disposed of by will may be sold or given away at any time before the death of the person who disposes of it in this manner. In other words, it does not become his will until his death.

Title to property bequeathed or devised by will does not pass until the death of the person in whose will it is included.

Every one's property is subject to his debts and the rights of his creditors must always be considered.

The conversation between the deceased and the defendant at the home of the deceased on March 30, 1952, the act of the deceased by which he gave the defendant the pocketbook and contents, and what transpired between them thereafter, constituted a gift *inter vivos*.

The deceased did not die until five days after that date and his will did not take effect until that time.

Having arrived at this conclusion, I am of the opinion that the property involved in this litigation belongs to the defendant, J. Clyde Baker.

Judgment for the defendant for costs.